LESLIE G. RAWDING & others *vs.* STATE FIRE MARSHAL.

SAME *vs.* COMMISSIONER OF PUBLIC SAFETY & others.

Suffolk.     March 6, 1930. — July 3, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*State Fire Marshal. Gasoline.*

The State fire marshal, upon an application to him for a permit under G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, after the granting by the selectmen of Weymouth following a public hearing of a license to keep, store and sell petroleum products in certain large steel storage tanks to be erected and in two underground tanks, properly ruled that he could consider only evidence bearing upon the fire hazard created, and excluded evidence, not relating to that issue, to show that the granting of the permit and the keeping and storing of petroleum products upon the premises in question would cause irreparable damage to the lands and properties of the petitioners in Weymouth, would decrease real estate values in the vicinity, would pollute the waters and beach adjacent to their estates, be a nuisance detrimental to the public health, an inconvenience to the people of the locality and contrary to the general good order and welfare of the community.

Statement by WAIT, J., of the difference between the function of the State fire marshal with respect to licenses relating to the keeping and storing of petroleum products within the metropolitan district, and permits relating thereto without the district.

The "permit" which the State fire marshal is given power to issue by G. L. c. 148, § 14, in the amended form appearing in St. 1928, c. 325, § 1, relates merely to compliance with the departmental requirements to meet the hazards of fire and explosion, while the license of aldermen or selectmen, which the same statute gives them power to issue after a hearing, deals with the broader questions of public welfare and convenience concerned in the presence of the structures and the business in the community.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on October 17, 1929, and afterwards

amended, for a writ of certiorari, described in the opinion. Also a

BILL IN EQUITY, filed in the Superior Court on April 15, 1929, in the nature of an appeal, also described in the opinion.

Upon return made by the respondent in the petition, that case was reserved by *Pierce*, J., for determination by the full court.

In the Superior Court, *Gray*, J., sustained demurrers by the defendants to the bill and the plaintiffs appealed.

*A. V. A. Thomason*, (*C. C. Steadman* with him,) for the petitioners and plaintiffs.

*H. Parker*, for the defendant Standard Oil Company of New York.

*C. F. Lovejoy*, Assistant Attorney General, for the respondents and defendants State Fire Marshal and another.

WAIT, J.   These proceedings are a petition for certiorari brought by certain taxpayers, property owners and residents in Weymouth, against the State fire marshal to quash an order of the marshal and compel a rehearing; and a statutory appeal from an order of the marshal in the form of a bill in equity brought in the Superior Court, under G. L. c. 147, § 5, as amended by St. 1928, c. 320, by the same complainants against the commissioner of public safety, the State fire marshal, and the Standard Oil Company of New York. The first is before us upon reservation by a justice of this court upon the amended petition and the return. The second is here on appeal from interlocutory decrees sustaining demurrers of the defendants.

The essential question presented by both is whether certain evidence offered by the plaintiffs at a hearing before the State fire marshal was wrongly excluded. It appears that after St. 1928, c. 320 and c. 325, § 1, became effective, the selectmen of Weymouth on November 5, 1928, after public hearing, granted a license to the Standard Oil Company of New York to keep, store and sell petroleum products in certain large steel storage tanks to be erected and in two underground tanks in Weymouth. Before such buildings or structures can be used for such purpose, St. 1928, c. 325

requires that a "permit shall have been granted therefor by the marshal or by some official designated by him for the purpose." On November 8, 1928, the company filed applications for the necessary permit. On November 22, 1928, notice was given by the marshal for a public hearing on December 5, 1928, on a protest of certain parties against the grant to the company of a permit to erect tanks and to keep, store and sell petroleum products therein. Hearing was had at which the plaintiffs were present. They endeavored to introduce evidence to show that the granting of the permit and the keeping and storing of petroleum products upon the premises in question would cause irreparable damage to the lands and properties of the petitioners in Weymouth, would decrease real estate values in the vicinity, would pollute the waters and beach adjacent to their estates, be a nuisance detrimental to the public health, an inconvenience to the people of the locality and contrary to the general good order and welfare of the community. The fire marshal ruled that in passing upon the issue of this permit he could consider only evidence bearing upon the fire hazard created, and excluded other evidence.

In this he was right. It was decided in *St. James Building Corp.* v. *Commissioner of Public Safety*, 260 Mass. 548, that evidence such as was here offered could properly be considered upon application for license to keep, store and sell gasoline, and to erect, maintain and conduct a public garage within the metropolitan fire district created by G. L. c. 148, § 28; and that the question of fire hazard was not the only matter to be determined upon such application. That decision, however, is not controlling when the premises are not within the metropolitan fire district. The function of the fire marshal is not the same in proceedings within and without that district. Within the district, he has to determine whether conditions are such that what may be or become a nuisance if not licensed shall be permitted by license to exist in a particular place; and, further, to decide whether the thing licensed complies with the rules and regulations applicable thereto and established by law with reference to hazards of fire and explosion. He, thus, acts

both as a tribunal to pass upon considerations of public welfare and convenience, and as an administrative officer to pass upon technical compliance with law and the regulations of the department of public welfare. Outside the district, his only duty is as an administrative officer. There, the duty of deciding upon the public aspects of the matter is placed by the statutes upon the mayor and aldermen of cities and the selectmen of towns.

It is not necessary to discuss in minute detail the changes wrought by successive statutes, it is enough to show that the distinction exists and is clearly recognized. St. 1866, c. 285, § 2, required any one who kept petroleum products in any city or town, in greater quantity than five hundred gallons in any one locality, to obtain a license from the mayor and aldermen or selectmen. The requirement was extended by St. 1869, c. 152, § 6; and by § 9 of that act (which became Pub. Sts. c. 102, § 75) city councils and inhabitants of towns were authorized to adopt ordinances, by-laws and regulations on the subject. By St. 1904, c. 370, this power to regulate was transferred from city councils and towns to the fire marshal's department of the district police, which was given power to make regulations in the matter and to prescribe the materials and construction of buildings to be used for the purpose. Section 3 of the act provided for a license from the mayor and aldermen or selectmen for the erection and use of buildings for keeping, storage, manufacture or sale of the articles, to be granted only after a public hearing; and in addition required a permit to be granted by the fire marshal's department.

This is the first requirement of a permit as distinguished from a license. It is manifest, we think, that the permit relates merely to compliance with the departmental requirements to meet the hazards of fire and explosion, while the license deals with the broader questions of public welfare and convenience concerned in the presence of the structures and the business in the community. Before the license can be granted a public hearing must be had. No such requirement is made for the issue of the permit.

By subsequent enactments the powers granted to the

department of the district police have passed to the State fire marshal; but no change, in substance, has been made with reference to the license and the permit, outside the metropolitan fire district. The authority of the marshal is there confined to a departmental matter. His jurisdiction there does not extend to dealing with the questions of public welfare involved in the grant of the license. He would exceed it, if he considered evidence immaterial to the hazards of fire and explosion.

This conclusion is borne out by the statutory provisions for appeal. There is no appeal from the decision of mayor and aldermen and selectmen on gránting the license. *Commonwealth* v. *Packard*, 185 Mass. 64, 67. There is a limited appeal from the marshal's decision. G. L. c. 147, § 5, as amended by St. 1928, c. 320. G. L. c. 148, § 45. *St. James Building Corp.* v. *Commissioner of Public Safety, supra.*

It becomes unnecessary to consider other points argued.

> *The decrees sustaining the demurrers are affirmed.*
> *The petition for certiorari is denied.*