MYER GOODWIN *vs.* DEPARTMENT OF PUBLIC UTILITIES.

Suffolk.    May 4, 1966. — June 6, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Public Utilities.    Carrier,* Of passengers, Charter service.

The Department of Public Utilities has implied authority under G. L. c. 159A, § 11A, as amended, to issue a charter bus license restricting the charter trips thereunder to those originating in a specified geographical area.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on April 27, 1965.

The case was reserved and reported by *Spiegel,* J.

*John D. O'Reilly, Jr.* (*Matthew L. McGrath, Jr.,* with him) for the petitioner.

*Peter Roth,* Assistant Attorney General, for the respondent.

WILKINS, C.J.   The petitioner is the holder of a charter bus license issued July 10, 1963, by the Department of Public Utilities authorizing him to engage in the business of rendering charter service by motor vehicle.   That license, however, contains a restriction limiting operations to trips originating within a radius of five miles of the civic center of Natick.   This is a petition for appeal under G. L. c. 25, § 5, for a review of a decision of the department denying a petition of November 30, 1964, for amendment of the license by removing the restriction.   The department's order of denial under date of April 14, 1965, stated that "there was no evidence . . . to show that public convenience and necessity requires the amendment of the charter license as proposed by the petitioner, or that the services presently afforded the traveling public by existing duly licensed charter carriers is inadequate or unsatisfactory to take care of present day needs."   The case is reserved and reported without decision by a single justice for the entry of such decree as may be appropriate under G. L. c. 25, § 5.

The petitioner raises the single issue whether the department has authority to impose upon charter service licensees geographical limitations specifying the areas within which the charter trips must commence.

General Laws c. 159A, § 11A (as amended through St. 1965, c. 537),[1] provides in material part: "No person shall operate or offer to provide service by means of any motor vehicle carrying ten or more persons, including the driver, upon any public way in charter service, as hereinafter defined, unless he shall have obtained from the department a license to engage in the business of rendering such service and certifying that the rendering of such service is consistent with the public interest, that public convenience and necessity require it and that the applicant is fit, willing and able properly to perform such service. 'Charter service' is hereby defined as the transportation of groups of persons who, pursuant to a common purpose and under a single contract, and at a fixed charge for the vehicle have acquired the exclusive use of the vehicle for the duration of a particular trip or tour and in such a manner as not to be subject to section one. The department may, after public hearing, grant or refuse to grant a license to engage in the business of rendering charter service, and may, after notice and hearing, suspend or revoke such a license for cause."

The power to grant a restricted license to engage in the business of rendering charter service by bus is apparent from § 11A. The department "may . . . grant or refuse to grant a license," and has a broad power of revocation of licenses which have been granted. The wide latitude conferred completely to deny an application, on a reasonable construction, includes according the lesser privilege. *Leach* v. *State Fire Marshal,* 278 Mass. 159, 165–166. *Camp* v. *Rex Inc.* 304 Mass. 484, 487. *Southern Pac. Co.* v. *Olympian Dredging Co.* 260 U. S. 205, 208. *Frost & Frost Truck-*

---

[1] As far as now pertinent, it is identical with § 11A (as amended through St. 1964, c. 41), which was the effective statute at the time of the proceedings in the department.

*ing Co.* v. *Railroad Commn. of Cal.* 271 U. S. 583, 591. 33 Am. Jur., Licenses, § 52. The same result fairly could be based on the right of revocation. *Leach* v. *State Fire Marshal, supra,* 165. The department is entrusted with the highly important function of applying the prescribed statutory standards. These include an adjudication that the service is consistent with the public interest; that it is required by public convenience and necessity; and that the licensee has the fitness and ability to perform the service.

The petitioner advances arguments based upon the different type of control imposed upon motor vehicles engaged in what might be described as public service transportation under G. L. c. 159A, § 1, where licenses must be obtained from the municipalities traversed rather than one from the department, as under § 11A. Reliance also is placed upon the express provision in c. 159A, § 7, that the certificate may have attached · "such terms and conditions as the department shall deem that public convenience and necessity may require." Other distinctions in form and language need not be set forth. There is also argument by the petitioner based on the different provisions in G. L. c. 159B relating to carriers of property by motor vehicle. These statutes were not enacted simultaneously with § 11A. Some were later enactments. It is not surprising that no authority is given for these contentions, which are based solely on supposed principle. They are unconvincing. Lack of identical language does not automatically prove varying intent. No extended discussion is necessary or desirable. We reject them.

A final decree is to be entered affirming the decision of the department.

*So ordered.*